TERRILL *v.* MICHIGAN UNITED TRACTION CO.

1. CARRIERS—STREET RAILWAYS—PERSONAL INJURIES—NEGLIGENCE. In the case of street car companies having regular stations at which the cars are in the habit of stopping for persons to get on and off, the same rule applies as in the case of railroad trains, and a passenger, while not absolved from the duty of exercising care for his safety, has the right to assume that tracks intervening between the place where he alights and the station will be kept safe while he is crossing, and the mere fact that he fails to look and listen before attempting to cross such tracks does not, as a matter of law, constitute contributory negligence.

2. SAME—TRIAL—INSTRUCTIONS. Where plaintiff was struck and injured by defendant's east-bound street car when she attempted to cross the south track to reach its station, maintained in the middle of the block, after alighting from a west-bound car, the court below was in error in his instructions to the jury in limiting the question of defendant's negligence to whether proper warning signals of the approach of the car had been given.

Error to Ingham; Wiest, J. Submitted February 4, 1919. (Docket No. 8.) Decided April 3, 1919. Rehearing denied June 13, 1919.

Case by Lenora Terrill against the Michigan United Traction Company for personal injuries. Judgment for defendant. Plaintiff brings error. Reversed.

*Warner & Raudabaugh* and *Kelley, Brown & Boice,* for appellant.

*Sanford W. Ladd* (*Warren, Cady, Ladd & Hill,* of counsel), for appellee.

MOORE, J. We quote sufficiently from the charge of the lower court to indicate what this litigation is about:

See notes in 13 L. R. A. (N. S.) 620; 15 L. R. A. (N. S.) 254; 23 L. R. A. (N. S.) 1224; 27 L. R. A. (N. S.) 128; 31 L. R. A. (N. S.) 338.

"The plaintiff in this case is a married woman and in June, 1915, she resided with her husband in the city of East Lansing; and she claims that on the evening of that day she had occasion to visit the city of Lansing, together with her daughter and husband; that in order to get to Lansing she boarded one of the defendant's street cars to be carried to Lansing, together with her daughter and her husband, and it was arranged between them, that is, between the plaintiff and her daughter and the husband that they should get off at the interurban station on Michigan avenue east, and there the husband should later join them, that is, join the plaintiff and her daughter. She claims that when the car reached the interurban station in the city of Lansing, it came to a stop and that together with her daughter she alighted from the car upon the street, that another car pulled up and stopped within four or five feet of the rear of the car from which she alighted. That she then started to go between the two cars and across the south track of the defendant railway company to get to the interurban station, and that while she was passing between the two cars an employee of the defendant company upon the car that had stopped just back of the car from which she alighted, suddenly called to her, 'look out,' that it startled her and apprehending some danger from the position she then occupied, she stepped hurriedly to the south, and was then struck by another car of the defendant company proceeding east along the south track.    *    *    *

"It may be well at this point to briefly state to you the right of the plaintiff to be upon the public street, and also the right of the defendant to operate its cars over the public street.

"When the plaintiff was carried by the defendant company to the interurban station or opposite the station where the cars stopped in the street, immediately upon her alighting from the car, she ceased to be a passenger of the defendant company. And from that moment, that is, from the time she alighted from the car it was her duty to have in mind the matter of her own safety and to bring to bear upon that matter such degree of care and caution as an ordinarily prudent person would bring under the same circumstances.

"Now having alighted from the car it was her duty to observe the conditions surrounding her, to make observation of what she ought to do with reference to her own safety. There was no obligation resting upon the defendant to save her from her own want of care. * * * Now what was the right and duty and obligation of the defendant in the premises? The defendant company had a right to maintain its tracks and operate its cars over the same upon the street in question. It had a right to maintain two tracks upon one of which cars might run to the west, and upon the other to the east, but in operating its cars, it should have in mind and it was its duty to have in mind the other uses made as well of the public highway. It had a right to maintain its passenger station in the middle of the block, and to stop its cars in the middle of the block so that passengers might alight and go to the station if they cared. But in stopping its cars and permitting passengers to alight and go to the station if they saw fit and to operate their cars along the other track while passengers were alighting from the north track, it was the duty of the defendant to have the user of the street by such passengers alighting in mind, and to operate their cars with a reasonable degree of care. The defendant company had a right to operate the open cars, and the mere width of the cars has nothing to do with the issue in this case so far as negligence is concerned.

"Now having in mind the rights of the plaintiff and of the defendant the plaintiff claims the defendant did not observe its obligation towards her in the use it made of the street. In other words, that it was guilty of negligence. * * *

"So in this case the negligence alleged and for your consideration is that of whether the defendant company operated its east bound car over the south track at the time the plaintiff was passing between the two cars on the north track, whether it operated its east bound car down to the point where parties might pass between such cars and go to the interurban station without sounding a warning of the approach of such car.

"I say to you now, it was the duty of the defendant to give warning by sounding a gong or bell of the

approach of the car upon the south bound track at the point in question.

"Now. the plaintiff alleges that such warning was not given, that is the allegation. She also claims the car was not operated with the proper degree of care upon approaching the point in question. That is such an indefinite allegation of negligence that I have considered it as not necessary to be submitted to you.

"So we then come to the one question of negligence alleged, that is that the car came east on the south track without giving warning of its approach to the point in question.

"Now upon that the burden rests upon the plaintiff to satisfy you by a preponderance of the evidence that no warning was given. You have heard her evidence, her testimony, she says she heard no warning. It was not necessary that the defendant give a warning that she should hear. Do not misunderstand this issue—it is not that she must have heard the warning —that is not the issue. The issue is, Was a warning given by the ringing of the bell or the sounding of a gong?    *    *    *

"Now let me make that plain to you. You will first take up the issue of whether there was a warning given of the approach of the car on the south track. If the testimony is left so you cannot say whether there was a warning given or not, then of course you cannot find affirmatively that there was no warning given. Therefore you could not find that the defendant was negligent. If you find there was a warning given, then you have reached a finding the defendant was not negligent. If having in mind all of the evidence you find that no warning was given, then there was want of due care on the part of the defendant company, and you would come to the consideration of other issues."

The jury after being out for a time came in for further instructions which were given them, and later returned a verdict in favor of the defendant. The case is brought here by writ of error.

Counsel say the court was wrong in limiting the jury as he did upon the question of the negligence of

defendant, and call attention to the following among other allegations of negligence in their declaration:

"(c) That it was negligent in running one of its cars past another car that was standing at its waiting room for the purpose of discharging passengers, without having that car under such control that it could stop it upon the appearance of danger.

"(d) That it was negligent in so running its cars past another car that was standing for the purpose of discharging passengers, as aforesaid, without giving signals of its approach, such as ringing a gong or bell or other signal such as are usually given to protect travelers. * * *

"(g) That said defendant was negligent in not protecting plaintiff, one of its passengers, who had been discharged from one of its cars, from danger and injury of other cars of said defendant while plaintiff was going from said car to the waiting room or depot of said defendant."

It is claimed all these averments of negligence except those contained in subdivision (d) were taken from the jury and that the charge to the jury in relation to that subdivision was erroneous.

The relative duties, of passengers alighting from street cars at street crossings, and the railway are pretty well understood in this State, but we cannot recall that any case has been before this court involving such a situation as that presented in the instant case. The authorities cited by counsel in their briefs are not controlling in this case and it is not likely the trial court had his attention called to any authority on all fours with the case before us.

The case is unlike *Clark* v. *Railway*, 168 Mich. 457, and *Davis* v. *Railway Co.*, 191 Mich. 131. In each of those cases the passenger alighted at a street corner where the cars did not stop except when signalled by a person desiring to leave the car, or to get upon it. In the case before us the passenger alighted at a regular station of the company in the middle of the block

where all cars were bound to stop, and where a number of persons were leaving the cars and going to the station, as was the plaintiff, and others were going from the station to the cars for the purpose of entering therein. It is evident that the duties of an interurban railway toward passengers alighting in the middle of a block in a congested street at one of its permanent stations is quite different from its duty to a passenger alighting at an ordinary street crossing.

In volume 4, Ruling Case Law, p. 1253, it is said:

"When a railroad company stops a passenger train where other tracks are between it and the depot platform, the rights of people having business with such train and the duty of the company toward them are the same as if all the intervening space between the depot and the train constituted the platform, and it is negligence on its part to allow another train to run between the passenger train and the station at which the passengers are being taken on or discharged. * * *

"In the case of the street car companies having regular stations at which the cars are in the habit of stopping for persons to get on and off, the same rule applies as in the case of railroad trains, and a passenger, while not absolved from the duty of exercising care for his safety, has the right to assume that tracks intervening between the place where he alights and the station will be kept safe while he is crossing, and the mere fact that he fails to look and listen before attempting to cross such tracks does not, as a matter of law, constitute contributory negligence."

We think this a correct statement of the law.

The case is reversed and a new trial ordered, with costs to the plaintiff.

BIRD, C. J., and OSTRANDER, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.