LELAND v. FORD.

1. APPEAL AND ERROR—LAW OF CASE.
    Decision rendered by Supreme Court is law of case in subsequent
        proceedings.

2. CORPORATIONS—RIGHTS OF STOCKHOLDERS.
    Purchasers of stock certificates after appointment of receiver for
        corporation acquired same interest as vendors had, and, on
        sale of corporation's property, would receive their propor-
        tionate share of moneys received after payment of debts
        regardless of price paid by them for stock.

3. SAME—CONTRACT DISCRIMINATING AGAINST CERTAIN STOCKHOLDERS
    VOID.
    Contract for sale of insolvent corporation's property and for
        reorganization of corporation, which did not provide that all
        stockholders should be treated in same manner, is invalid.

Appeal from Oakland; Covert (Frank L.), J. Submitted June 11, 1930. (Docket No. 85, Calendar No. 35,075.) Decided December 2, 1930. Rehearing denied June 1, 1931.

Bill by Wilfred C. Leland and others against Henry Ford and others to impress a trust upon certain shares of stock and for an accounting. From a decree dismissing the amended bill of complaint, plaintiffs appeal. Affirmed.

*Kenneth M. Stevens* and *Wm. Henry Gallagher*, for plaintiffs.

*Longley & Middleton* (*Louis J. Colombo*, of counsel), for defendants.

SHARPE, J. An order denying a motion to dismiss the bill of complaint first filed in this case was re-

viewed by this court. *Leland* v. *Ford,* 245 Mich. 599. A motion for rehearing was denied. The bill was dismissed, but the cause remanded with leave to plaintiffs to apply for permission to file an amended bill which might cure the defects pointed out. Such permission was granted, and the bill now before us was filed. A motion to dismiss was granted by the trial court, and the decree made pursuant thereto is before us on appeal.

In the prevailing opinion filed on the former hearing (245 Mich. 607) it was said:

"What we do hold, and it is all that the purposes of the case requires, is that after they publicly announced that they were going to look after the interest of the stockholders, if they acted at all, their duty required them to act for all, not for a portion of the stockholders. A contract for the reorganization of a corporation which contemplates the taking care of a portion only of the stockholders, and the exclusion of another portion from the benefits of the reorganization, is fraudulent and cannot stand."

It was also held that the defendants might rely on the invalidity of the alleged contract in this respect in their defense.

While the writer of this opinion was not in accord with the conclusion reached by a majority of the court, the decision then rendered must be treated as the law of the case.

"So long as the facts remain the same, the rule of law applied by this court in the decision of the cause remains the law of the case in all subsequent proceedings therein." *Mynning* v. *Railroad Co.,* 67 Mich. 677, 679.

See, also, *Dikeman* v. *Arnold,* 83 Mich. 218; *Hickox* v. *Railway Co.,* 94 Mich. 237; *Damon* v. *DeBar,* 94 Mich. 594; *Pierce* v. *Underwood,* 112 Mich. 186;

*Porth* v. *Cadillac Motor Car Co.,* 209 Mich. 89; *American Ins. Co.* v. *Martinek,* 216 Mich. 421.

The question here presented is whether the allegations in the bill now before us relative to the duty imposed upon the Lelands to protect the interests of all the stockholders differ so materially from those in the former bill as relieves it from the objection there made and sustained by this court.

The 18th paragraph of the original bill, as amended before the motion to dismiss was made, reads as follows:

"That thereafter in and through oral negotiations commenced on, to wit: November 1, 1921, and continuing until, to wit: February 3, 1922, conducted upon behalf of the plaintiffs by said Henry M. Leland and Wilfred C. Leland with the defendants, Henry Ford and Edsel Ford, in the county of Wayne and State of Michigan, it was orally agreed that said Lelands and said Fords would co-operate in the reorganization of said corporation and the continuance of its business; that said Lelands would desist from seeking to interest any other capitalists in said enterprise; that said Fords and said Lelands would endeavor to procure a prompt sale of the assets of said corporation at the hands of said receiver; that upon said sale being had, said defendants, Ford, would purchase said assets and would advance such sum as would be required to consummate said purchase; that upon said purchase being effected, said Fords would pay all creditors in full the just amount of their claims; that further upon said sale being effected, said Fords would pay to all holders of class 'A' stock of said corporation at the time of the appointment of said receiver (other than brokers and other than other persons who had bought same at three [$3] dollars, or less, per share), and to all persons purchasing stock directly from the corporation upon an instalment plan of payment at the time

said receiver was appointed, the full amount of their investments in said stock, being the amount paid therefor, less the sum realized from the sale thereof, if any, and would likewise pay to the holders of said class 'B' stock of said corporation at the time of the appointment of said receiver, in full repayment of their investments therein, the aggregate sum of one million, five hundred thousand ($1,500,000) dollars to be distributed among the said class 'B' stockholders in proportion to their respective holdings of said stock, the sum thus due each of such class 'B' stockholders to be diminished by the amount received by him for the sale of his stock, if any; that a new company would be formed to take over the assets of said corporation, which company would continue the business of said corporation and would continue its selling organization and would be under the direction and control of said Lelands; that said Lelands would accept the control and direction of said new company and would operate same so as to maintain the high manufacturing standards and ideals of the former company and the high quality of its products.''

Subdivision (f) of the 19th paragraph of the bill now under consideration reads as follows:

''That further, upon said sale being effected said Fords would pay to all holders of class 'A' stock of said corporation at the time of the appointment of the receiver, and to all persons purchasing stock directly from the corporation upon the instalment plan of payment at the time said receiver was appointed, the full amount of their investments in said stock, being the amount paid therefor, less the sum realized from the sale thereof, if any, and would likewise pay to the holders of class 'B' stock of said corporation at the time of the appointment of said receiver in full repayment of their investment therein, the aggregate sum of one million five hundred thousand dollars ($1,500,000) to be dis-

tributed among the said class 'B' stockholders in proportion to their respective holdings of said stock, the sum thus due each of such class 'B' stockholders to be diminished by the amount received by him from the sale of his stock, if any."

In the 22d paragraph it is said:

"That on or about December 20, 1921, said Fords stated to said Lelands that they had been informed that brokers had been purchasing the stock of said corporation for speculation, and others had purchased stock for speculation at three dollars ($3) and less per share, and that it was not said Fords' intention to make payments to the holders of stock so purchased."

When the receiver was appointed, the stock of the corporation was owned by certain persons as indicated by the certificates held by them. They were, of course, at liberty to dispose of their certificates at will, and purchasers from them acquired the same interest in the corporation as their vendors then had, and, on a sale of the property of the corporation, would receive their proportionate share of the moneys received thereon after payment of all indebtedness of the corporation. Under our former decision, any agreement, under which reorganization was to be had, to be valid must have provided that all such stockholders should be similarly protected. In other words, it was held to be the duty of the Lelands, in entering into a contract with the Fords by which the latter became the purchasers of the property of the corporation, to provide therein that all the stockholders should be protected in the same manner, and it was held that, as the alleged agreement failed to so provide, it was invalid and unenforceable. It is apparent that the infirmity in this respect has not been cured by the amendment. In

fact, counsel for the plaintiffs so concede in their reply brief. We quote therefrom:

"The contract as now alleged is identical as to its beneficiaries with the contract originally alleged. We, therefore, repeat our statement made in the lower court that our present bill has all the infirmities our first bill had, *if any*. We make this statement because we believe that the clarification of our language used in the first bill has removed those infirmities. Where we were misunderstood we have clarified our language *and we have shown that that* misunderstanding was the whole basis of the infirmities."

The change in the language does not relieve the provision from the objection thereto, clearly stated by Mr. Justice FELLOWS. As was said by the trial court:

"It seems to me that, following the reasoning of Mr. Justice FELLOWS, in order for the contract to be valid it must show affirmatively that all the stockholders without exception were to be taken care of on an equal basis. If they were, the contract was valid. If they were not, then the contract was void."

Other imperfections are pointed out, but it seems unnecessary to discuss them.

The decree is affirmed, with costs to appellees.

BUTZEL, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.

WIEST, C. J. (*concurring*). When this case was here before my views did not prevail.

The majority opinion was and is the law of the case, and the parties are, and I am now, bound by it.

Therefore, I concur in the opinion of Mr. Justice SHARPE.